UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

LOUIS C.,[1]

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

20-CV-554-LJV
DECISION & ORDER

---

On May 8, 2020, the plaintiff, Louis C. ("Louis"), brought this action under the Social Security Act. He seeks review of the determination by the Commissioner of Social Security ("Commissioner") that he was not disabled. Docket Item 1. On February 24, 2021, Louis moved for judgment on the pleadings, Docket Item 18; on April 23, 2021, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 20; and on May 28, 2021, Louis replied, Docket Item 23.

For the reasons stated below, this Court denies Louis's motion and grants the Commissioner's cross-motion.

---

[1] To protect the privacy interests of social security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial. Standing Order, Identification of Non-government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

## **STANDARD OF REVIEW**

When evaluating a decision by the Commissioner, district courts have a narrow scope of review: they are to determine whether the Commissioner's conclusions are supported by substantial evidence in the record and whether the Commissioner applied the appropriate legal standards. *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Indeed, a district court *must* accept the Commissioner's findings of fact if they are supported by substantial evidence in the record. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009). In other words, a district court does not review a disability determination *de novo*. *See Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998).

## **DISCUSSION**

Louis argues that the ALJ erred in failing to follow the Court's prior remand order. Docket Item 18-1. More specifically, Louis argues that the ALJ "failed to properly and fairly develop the record and instead relied on the stale 2013 opinion of a review psychologist." *Id.* at 18. This Court disagrees and therefore affirms the Commissioner's finding of no disability.

**I.     DUTY TO DEVELOP THE RECORD**

"Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) (citing *Echevarria v. Sec'y of Health & Human Servs.*, 686 F.2d 751, 755 (2d Cir. 1982)); *see also Pratts v. Chater*, 94 F.3d 34, 37 (2d

2

Cir. 1996) (same); 42 U.S.C. § 423(d)(5)(B) (requiring that the Commissioner, before rendering any eligibility determination, "make every reasonable effort to obtain from the individual's treating physician (or other treating health care provider) all medical evidence, including diagnostic tests, necessary in order to properly make such determination"). Thus, "where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history 'even when the claimant is represented by counsel or . . . by a paralegal.'" Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999) (quoting Perez, 77 F.3d at 47).

Moreover, an ALJ may not reject or discount the opinion of a medical professional unless other competent medical evidence in the record supports that decision. See Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998) ("In the absence of a medical opinion to support [an] ALJ's finding as to [a claimant's] ability to perform [a certain level of] work, it is well-settled that the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion. While an ALJ is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who submitted an opinion to or testified before him." (citation and original alterations omitted)); Shaw v. Chater, 221 F.3d 126, 135 (2d Cir. 2000) ("[W]hile a physician's opinion might contain inconsistencies and be subject to attack, 'a circumstantial critique by non-physicians, however thorough or responsible, must be overwhelmingly compelling in order to overcome a medical opinion.'" (quoting Wagner v. Sec. of Health & Human Servs., 906 F.2d 856, 862 (2d Cir. 1990)).

3

The ALJ who first denied Louis's application violated these rules: having "rejected the only medical opinions as to [Louis's] mental ability to perform work-related functions," the ALJ created a gap in the record and formulated a mental residual functional capacity ("RFC") without a medical opinion to support it. Docket Item 10 at 421-22 (Case No. 17-CV-135-FPG (W.D.N.Y. Aug. 20, 2018)). For that reason, the Court vacated the Commissioner's finding of no disability and remanded Louis's case for further administrative proceedings. *Id.* at 423.

On remand, six new medical opinions discussing Louis's mental health were added to the record. *See id.* at 874-81 (opinion of Kevin P. Duffy, Psy.D., dated December 30, 2019); *id.* at 829-32 (opinion of Susan Santarpia, Ph.D., dated October 31, 2019); *id.* at 845-46 (opinion of John F. Reilly, Jr., M.D., dated January 2, 2019); *id.* at 792 (opinion of Dr. Reilly dated March 15, 2017); *id.* at 782-83 (opinion of E.P. O'Brien, III, M.D., dated January 2, 2017); *id.* at 784-85 (opinion of Dr. O'Brien dated October 2, 2015). Louis asserts that the ALJ "rejected all the new opinions" and, as a result, went "back to square one with regard to developing the record." Docket Item 23 at 4. He argues that because the ALJ did not solicit another medical opinion, the ALJ violated the Court's remand order. *See id.*; *see also* Docket Item 18-1 at 22.

But the ALJ did not reject all the new opinions. On the contrary, he afforded great or significant weight to several of them. And what is more, he explained his reasons for the weight he gave to the various opinions.

The ALJ gave "great weight" to the "assessments of moderate limitation[s] from Dr. O'Brien as set forth in his October 2014 medical source statement." Docket Item 10 at 323. Dr. O'Brien had found that Louis was "[m]oderately [l]imited" in carrying out

instructions, maintaining attention and concentration, making simple decisions, interacting appropriately with others, maintaining socially appropriate behavior without exhibiting behavior extremes, and appearing able to function in a work setting at a consistent pace. *Id.* at 787. In his 2015 and 2017 opinions, Dr. O'Brien likewise found that Louis was moderately limited in interacting with others, maintaining socially appropriate behavior without exhibiting behavior extremes, and appearing to function in a work setting at a consistent pace. *See* Docket Item 10 at 783, 785. So the ALJ necessarily gave "great weight" to those findings as well. *See id.* at 323.

The ALJ also gave "significant weight" to the portion of Dr. O'Brien's 2014 opinion finding that Louis was "[v]ery [l]imited" in understanding and remembering instructions. Docket Item 10 at 323; *id.* at 787. Because Dr. O'Brien likewise found that Louis was very limited in understanding and remembering instructions in his 2015 and 2017 opinions, *id.* at 783, 785, the ALJ must have afforded those parts of Dr. O'Brien's later opinions significant weight, too.

The ALJ did not credit Dr. O'Brien's 2015 and 2017 findings that Louis was "[v]ery [l]imited" in carrying out instructions, maintaining attention and concentration, and making simple decisions. *Id.* at 323. But he gave good reasons for discounting those assessments: they "seem[ed] to be related to [Louis's] subjective allegations rather than clinical evidence," and "there [was] no documented change in [Louis's] clinical presentation or other corresponding medical evidence that explain[ed] an increase in the assessment of limitations" after October 2014. *Id.*

The ALJ also gave "little weight" to Dr. Reilly's 2017 and 2019 opinions because "Dr. Reilly stated that he had not treated [Louis] since July 1, 2007." *Id.* at 323-24. And

5

the ALJ gave "little weight" to Dr. Santarpia's opinion that Louis had no significant mental limitations because it was "inconsistent with her own examination of [Louis]." *Id.* at 324.[2]

In sum, the ALJ weighed the new opinions and explained the weight he assigned to them.[3]  So Louis's argument that the ALJ rejected all the new opinions is plainly incorrect.

Louis also argues that the ALJ nevertheless should have "develop[ed] the record with a[] [medical expert]" to comply with the remand order.  Docket Item 18-1 at 22; *see also id.* at 21.  But that argument misconstrues the Court's prior order.  That order explained that the ALJ had erred by formulating a mental RFC without a medical opinion and without engaging in a function-by-function analysis.  Docket Item 422-23.  In other words, the Court did not instruct the ALJ to solicit an expert opinion; it found that the ALJ *created* an evidentiary gap by rejecting the only mental medical opinions in the record and not filling the gap in some way.

The ALJ did not make those errors here.  In addition to crediting Dr. O'Brian's opinions, the ALJ also credited Dr. Duffy's 2013 opinion, giving it "significant weight," because "it [was] consistent with [Louis's] having more than minimal limitation[s] for

---

[2] The ALJ's decision indicates that he may have meant to give Dr. Duffy's 2019 decision significant weight, but the ALJ did not explicitly say that.  *See* Docket Item 10 at 322 (discussing the 2013 and 2019 opinions together).  To the extent that was an error, it was harmless.  Dr. Duffy's 2019 opinion largely reiterated his 2013 findings, to which the ALJ gave significant weight and on which he relied in formulating the RFC. *See id.* at 875, 878.

[3] An ALJ is tasked with resolving "[g]enuine conflicts" among the sources, *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (citation omitted), and "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole," *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).  The ALJ did that here.

making appropriate decisions, dealing with stress,[4] and interacting with others." *Id.* at 322.  Similarly, he afforded Dr. T. Bruni's[5] 2013 opinion "great weight" because "it [was] generally consistent with the medical evidence" and, while "based on review of the medical evidence available as of August 2013[,] . . . [subsequent] treatment notes d[id] not document any significant change in the nature, duration, or limiting effect of [Louis's] mental impairments." *Id.*

Rather than rejecting all the mental medical opinions here, the ALJ gave significant or great weight to several of them.  And because he relied on those opinions in formulating the RFC, there was no evidentiary gap to fill.  "[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim."  *Rosa*, 168 F.3d at 79 n.5 (quoting *Perez*, 77 F.3d at 48).  Therefore, the ALJ was not required to solicit an opinion from a medical expert or recontact any of the providers.

For all those reasons, this Court is unpersuaded by Louis's argument that the ALJ violated the Court's remand order.

---

[4] An ALJ generally must "make specific findings about the nature of a claimant's stress, the circumstances that trigger it, and how those factors affect his ability to work." *Stadler v. Barnhart*, 464 F. Supp. 2d 183, 189 (W.D.N.Y. 2006) (citations omitted).  But an ALJ need not make specific findings regarding stress if the claimant's medical record does not indicate that stress will limit the claimant's ability to function.  *Chamberlin v. Colvin*, 2016 WL 3912531, at *3 (W.D.N.Y. July 20, 2016).  Although Dr. Duffy found that Louis had stress and difficulty interacting with others "at times," Docket Item 10 at 267, Louis testified at the hearing that he had no difficulty getting along others, *id.* at 368.  Because there was no indication that Louis's stress would affect his ability to function, the ALJ here was not required to make specific findings about Louis's stress.

[5] Dr. Bruni is addressed in the record was only "Dr. Bruni" or "T. Bruni." *See, e.g.*, Docket Item 10 at 86, 279, 322.

## II.     STALE OPINION

Louis also argues that the ALJ improperly relied "on the stale opinion of review psychologist Dr. Bruni from 2013" in formulating the RFC.  Docket Item 18-1 at 22.  According to Louis, Dr. Bruni's opinion must be stale because when Dr. Bruni reviewed the record in 2013 and wrote his opinion, the record included only two of Dr. Duffy's reports, and the record now includes additional opinions, including Dr. Duffy's 2019 opinion.  *Id.* at 22-23.

"A stale medical opinion does not constitute substantial evidence to support an ALJ's findings."  *Majdandzic v. Comm'r of Soc. Sec.*, 2018 WL 5112273, at *3 (W.D.N.Y. Oct. 19, 2018).  But a "gap of time between when an opinion is rendered and the disability hearing and decision does not automatically invalidate that opinion."  *Id.*  For a medical opinion to be stale, not only must there be a significant period of time between the date of the opinion and the hearing date, there also must be subsequent treatment notes "indicat[ing] a claimant's condition has deteriorated" over that period.  *Whitehurst v. Berryhill*, 2018 WL 3868721, at *4, *5 (W.D.N.Y. Aug. 14, 2018).

Louis does not point to anything to show that his condition deteriorated after Dr. Bruni's 2013 opinion.  On the contrary, as part of a 2017 function report, Louis said that his "illness [h]as not change[d] in 51 year[s]."  Docket Item 10 at 714.  Likewise, Dr. Duffy's 2019 opinion—which Louis uses to argue that Dr. Bruni's opinion was stale—also says that Louis's condition had remained largely the same between 2013 and 2019.  *See* Docket Item 10 at 878 (Dr. Duffy's 2019 opinion stating that "[t]oday's results are consistent with those obtained in 2013, with no appreciable change in overall functioning").  And when crediting Dr. Bruni's opinion, the ALJ explicitly found that Louis's condition had largely remained the same since that opinion was rendered, and

8

he gave good and detailed reasons for that conclusion.  *See id.* at 322.  In sum, because "the record indicates no meaningful deterioration following" Dr. Bruni's 2013 opinion, that opinion was not stale, *see Whitehurst*, 2018 WL 3868721, at *4, and the ALJ did not err in relying on it to formulate the RFC.[6]

Finally, the RFC is supported by substantial evidence.  The ALJ found that Louis had following mental RFC:

> [Louis] can perform unskilled tasks, work requiring little or no judgment to do simple duties that can be learned on the job in a short period of time; he is also capable of performing work that can be learned within six months; he can occasionally perform complex tasks, defined as those taking more than six months to learn; he can occasionally interact with the general public, coworkers, or supervisors; he is able to understand, remember, and carry out short, simple instructions and occasionally complex instructions; he is able to maintain attention and concentration on such tasks; he is able to maintain a schedule and be punctual within customary tolerances for such tasks; he is able to accept instructions and respond appropriately to criticism from supervisors for such tasks; [and] he is able to get along with coworkers and peers for such tasks.

Docket Item 10 at 318.

The ALJ gave the most weight to the medical opinions that found Louis to be moderately limited in the various mental functional domains.  *See id.* at 322 (the ALJ's giving "great weight" to Dr. Bruni's opinion that "[Louis] has moderate limitations for performing detailed work, keeping a regular schedule, sustaining an ordinary routine, working in coordination or proximity with others, completing a normal workday or workweek at a consistent pace, interacting with the general public, responding to

---

[6] It is worth noting that the ALJ did not rely exclusively on Dr. Bruni's 2013 opinion as Louis suggests.  *See* Docket Item 18-1 at 22.  As detailed above, in addition to assigning great weight to Dr. Bruni's opinion, he also gave great weight to Dr. Duffy's 2013 opinion and to parts of Dr. O'Brien's 2014 opinion (much of which was repeated in his 2015 and 2017 opinions); he gave significant weight to other opinions as well.  *See* Docket Item 10 at 322-23.

changes in work settings, and setting realistic goals or independent plans"); *id.* at 323 (the ALJ giving "great weight" to Dr. O'Brien's "assessment of moderate limitation[s]"). "It is well settled that a limitation to unskilled work[7] sufficiently accounts for moderate limitations in work-related functioning." *Washburn v. Colvin*, 286 F. Supp. 3d 561, 566 (W.D.N.Y. 2017); *see, e.g.*, *Whipple v. Astrue*, 479 F. App'x 367, 370 (2d Cir. 2012) (holding that an RFC to "perform[] work that 'involved simple tasks and allowed for a low-stress environment'" was supported by substantial evidence where consultative examiners concluded that the plaintiff "was only mildly and moderately impaired by his depression and anxiety"); *Saxon v. Colvin*, 2015 WL 3937206, at *6 (W.D.N.Y. 2015) (holding that the plaintiff's "moderate limitation[s] in the ability to learn new tasks, perform complex tasks, make appropriate decisions, relate adequately with others, and deal with stress" were sufficiently accommodated by an RFC "which limit[ed him] to simple routine tasks in a low stress, low contact environment").

In sum, the ALJ did not create a gap in the record, nor did he impermissibly rely on his lay opinion or stale evidence. Moreover, the RFC incorporated the limitations of medical opinions on which the ALJ relied. Therefore, the RFC is supported by substantial evidence and, even if this Court might have concluded differently, it cannot second guess the ALJ's judgment. *See* 42 U.S.C. § 405(g).

---

[7] Unskilled work is "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." *See* 20 C.F.R. §§ 404.1568(a); 416.968(a).

**CONCLUSION**

The ALJ's decision neither was contrary to the substantial evidence in the record, nor did it result from any legal error.  Therefore, for the reasons stated above, Louis's motion for judgment on the pleadings, Docket Item 18, is DENIED, the Commissioner's cross-motion for judgment on the pleadings, Docket Item 20, is GRANTED; the complaint, Docket Item 1, is DISMISSED, and the Clerk of the Court shall close the file.

SO ORDERED.

Dated:	August 11, 2021
	Buffalo, New York

                                                */s/ Lawrence J. Vilardo*
                                                LAWRENCE J. VILARDO
                                                UNITED STATES DISTRICT JUDGE